# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### NEWARK DIVISION

| | |
|---|---|
| CHARLES ANTONELLI, individually, and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>CONDUENT INC., CONDUENT STATE & LOCAL SOLUTIONS, INC., and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY d/b/a MTA BRIDGES AND TUNNELS and d/b/a NEW YORK E-Z PASS SERVICE CENTER,<br><br>DEFENDANTS. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Charles Antonelli, individually, and on behalf of all others similarly situated (the "Class"), brings this action against Conduent Inc., Conduent State & Local Solutions, Inc. (together, "Conduent"), and Triborough Bridge and Tunnel Authority d/b/a MTA Bridges and Tunnels and d/b/a New York E-Z Pass Service Center (collectively, "Defendants" or "E-Z Pass") and alleges as follows based upon personal knowledge as to himself and his own acts and experiences; and, as to all

other matters, upon information and belief based upon, *inter alia*, investigations conducted by his attorneys:

## <u>NATURE OF THE ACTION</u>

1.      This is a putative class action to recover charges which Defendants have illegally assessed against motorcycle drivers who use E-ZPass transponders.

2.      Electronic Tolling Collection ("ETC") allows a motorist traveling on a participating toll facility to pay his/her toll automatically from a prepaid account, without having to fumble for cash or retrieve and present a toll ticket.

3.      By placing a small electronic tag on the motorcycle windscreen, that vehicle can pass through a toll lane equipped with a "reader" that collects and electronically transmits the customer's account status to the appropriate toll agency and the toll is charged to or credited against that customer's account.

4.      Defendants have unlawfully charged Plaintiff Charles Antonelli ("Plaintiff") and other motorcycle drivers toll amounts for a class of vehicle other than motorcycles, without notice, without their knowledge, and without providing any meaningful process to dispute or appeal the charges.  These occurrences have led to the imposition of unwarranted and excessive fees.

5.      Any attempts made by E-ZPass customers to dispute charges are encumbered by an unnecessarily complicated login and security system, and then further encumbered by customer service representatives who provide incorrect,

confusing, and often misleading information. Some of the telephone agents do not even understand the difference between vehicle classes, making it impossible to successfully dispute motorcycle-related charges.

6.     Accordingly, Plaintiff brings this action to redress Defendants' violations of the New York Business Law (N.Y. Gen. Bus. Law §349, et seq. and §350, et seq.) and to recover for breach of contract, fraudulent concealment, fraudulent misrepresentation, conversion, and unjust enrichment.

## PARTIES

**Plaintiff Charles Antonelli**

7.     Plaintiff Charles Antonelli is a citizen of New York.  Plaintiff Antonelli currently resides in New York, NY, and has at all times pertinent to this Complaint.

8.     Plaintiff Antonelli owns two motorcycles and has purchased two E-ZPass motorcycle-specific transponders through Defendant Triborough Bridge and Tunnel Authority d/b/a New York E-Z Pass Service Center ("TBTA").

9.     While Plaintiff Antonelli only owns motorcycles, categorized as Class 11 vehicles, Defendants have incorrectly billed Plaintiff as Class 1 (cars) and Class 9 (trucks) while traveling using his E-ZPass motorcycle transponders.[1]

10.     Plaintiff contacted the New York E-Z Pass Service Center about

---

[1] https://www.paranynj.org/Transportation/Pdf/E-ZPass%20Vehicle%20Descriptions.pdf (last visited Oct. 4, 2021).

3

incorrect vehicle classification billing and was told that it cannot change the bill, but that they would open up a case and transfer him to another department who could help him. The department he was transferred to did not provide him with a solution. To date, TBTA has failed to solve the classification issue and continues to overcharge him due to incorrect vehicle classifications caused by malfunctions in Defendants' equipment.

11.    Plaintiff Charles Antonelli has suffered an ascertainable loss as a result of Defendants' incorrect billing classification issue, including, but not limited to, out of pocket loss associated with the incorrectly billed amounts.

12.    Neither Defendants, nor any of their agents, dealers or other representatives informed Plaintiff of the existence of this incorrect billing classification issue. Had Defendants disclosed these issues to Plaintiff, Plaintiff would not have purchased and used his E-ZPass motorcycle transponders.

**Defendants**

13.    Defendant Conduent Inc. is incorporated in New York and headquartered in Florham Park, New Jersey. Conduent owns the E-ZPass toll collection system. Conduent Inc. is the parent of Conduent State & Local Solutions, Inc.

14.     Defendant Conduent State & Local Solutions, Inc. is incorporated in New York and headquartered in Florham Park, New Jersey. Conduent State & Local Solutions, Inc. is a subsidiary of Conduent, Inc.

15.     Conduent Inc. and Conduent State & Local Solutions, Inc. are linked such that they operate as a single business enterprise related to the conduct and practices alleged herein, and are responsible for the tolling operations of Defendant Triborough Bridge and Tunnel Authority.

16.     Defendant Triborough Bridge and Tunnel Authority d/b/a MTA Bridges and Tunnels and d/b/a E-Z Pass New York Service Center is incorporated in New York and headquartered in New York, New York, and is the largest bridge and tunnel toll agency in the United States.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because (i) there are 100 or more Class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

18.     This Court has personal jurisdiction over Defendants Conduent Inc. and Conduent State & Local Solutions Inc. maintain their corporate headquarters in this judicial district and have conducted substantial business in this judicial district.

19.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant Conduent Inc. and Conduent State & Local Solutions, Inc. are headquartered and regularly transact business in this district, are subject to personal jurisdiction in this district, and, therefore, are deemed to be citizens of this district. Additionally, Defendants advertise in this district and have received substantial revenue and profits from toll transactions in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims herein occurred, in part, within this district.

## FACTUAL ALLEGATIONS

**The E-ZPass Electronic Tolling System**

21.    In 1990, seven toll facilities from the states of New York, New Jersey and Pennsylvania joined to form an alliance known as the E-ZPass Interagency Group. These seven agencies represented almost 40% of all U.S. toll transactions and nearly 70% of all U.S. toll revenue. This unprecedented cooperative effort included representatives from the New Jersey Highway Authority (operator of the Garden State Parkway), the New Jersey Turnpike Authority, the New York State Thruway Authority, the Pennsylvania Turnpike Commission, the Port Authority of

New York and New Jersey, the South Jersey Transportation Authority (operator of the Atlantic City Expressway), and the MTA Bridges and Tunnels.

22.    E-ZPass Interagency Group's goal was to implement a regionally compatible, non-interfering electronic toll collection system that would not only satisfy the divergent toll collection and traffic management needs of the seven participating agencies, but would also provide regional mobility and convenience to their customers.

23.    The E-ZPass Program consists of toll agencies/companies in 19 states, servicing more than 27 million accounts, 43 million tags and the collection of over $11.3 billion dollars in electronic toll revenues.

24.    Over the past thirty years, toll collectors have been gradually replaced by various electronic systems. The electronic systems detect signals emitted by a transponder located inside a vehicle, which registers when a vehicle enters or exits a toll road. When the vehicle exits the troll road, the toll is paid by debiting a prepaid account connected to the transponder.

25.    One such system is E-ZPass, an electronic toll collection system used throughout the Midwest and East Coast of the United States. In order to activate an E-ZPass account with Defendants, the customer must provide E-ZPass with the license plate number that will be associated with the transponder.

26.     In order to activate an E-ZPass motorcycle account with Defendants, the customer must provide motorcycle registration to receive a special motorcycle tag. Motorcycles are defined as Class 11 vehicles and are charged 50% of the Tolls By Mail rate. There is a large, dark "M" on the E-ZPass motorcycle tag to identify them specifically as motorcycle tags. Motorcycles equipped with E-ZPass transponders pass through toll lanes and the toll amount is automatically withdrawn from a pre-paid account linked to the transponder.

27.     Users obtain E-ZPass transponders from a participating state agency and may use those transponders on roadways operated by other states' agencies.

28.     Customers are also required to agree to either automatically or manually replenish their account. If the customer opts to have the account automatically replenish, the customer must agree to secure an account with a credit or ACH bank card and provide the credit or ACH bank card information to E-ZPass New York Service Center on the application.

29.     The credit card or ACH bank card is used to automatically replenish the account when it dips below approximately 25% of the replenishment amount. The "replenishment amount" is determined to be a customer's average monthly usage during the period evaluated. The period evaluated is 35 days after the account was opened and then every 90 days thereafter.  When the balance in the customer's

account drops below 25% of the replenishment amount, Defendants automatically charge the customer.

30.    Defendants state that a customer's account balance and other detailed account information can be accessed either by calling 1-800-333-TOLL (8655) or on its website.

**Defendants' Conduct**

31.    Defendants advertise that E-ZPass "is an electronic toll collection method that makes traveling more convenient and quicker as you travel through participating toll facilities, and helps reduce traffic congestion for everyone."

32.    Defendants advertise that its toll entities, stretching across 19 states, operate the "extremely successful E-ZPass electronic toll collection program."

33.    Defendants advertise that they enjoy "high levels of customer satisfaction."

34.    Defendants, however, regularly assess unreasonable, exorbitant charges on drivers without adequate notice or opportunity to be heard, or any meaningful way to appeal such charges.

35.    In many cases, the E-ZPass motorcycle equipment registers as a different class of vehicle even where a valid, working E-ZPass motorcycle-specific transponder is correctly mounted on the motorcycle. In other words, Defendants assess incorrect fines and penalties for tolls simply because its own equipment fails

to correctly register the valid and correctly mounted E-ZPass motorcycle transponder.

36.    Despite Defendants' knowledge that their equipment may fail to register a valid and correctly mounted transponder, Defendants fail to warn consumers of this fact because they reap significant profits from their equipment malfunctions.

37.    Upon information and belief, Defendants knew or reasonably should have known that many of the existing motorcycle transponders in use were not billing according to the correct vehicle classification.

38.    Defendants do not provide adequate notice before assessing disproportionate fines, fees, and other charges. In fact, the fines, fees, and other charges are instantly withdrawn from consumers' accounts upon assessment.

39.    Defendants do not notify customers that they have been levied with incorrect fines that are instantly withdrawn from their accounts, and oftentimes customers do not realize they have been charged with fines unless they notice that their account is being replenished more frequently than they had been accustomed to prior to the first instance of fines being improperly assessed.

## TOLLING OF STATUES OF LIMITATIONS

40.    Defendants' knowing and active concealment and denial of the facts alleged herein have tolled any applicable statute(s) of limitations.

41.    Plaintiff and the Class could not have reasonably discovered the true facts regarding Defendants' unlawful, abusive scheme, including the defect in the transponders and billing system, until shortly before this litigation commenced.

42.    Defendants were, and remain under, a continuing duty to disclose to Plaintiff and the Class the true facts concerning the transactions and transponders, and failings described above, that require increased, exorbitant expenses operating under the electronic tolling system.

43.    As a result of Defendants' active concealment of and breach of their duty to disclose the existence of the issues and defects surrounding their transponders and the electronic tolling system, any and all applicable statute(s) of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action on his own behalf, and on behalf of the following Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as:

> **Nationwide Class:**
> All persons or entities in the United States who purchased and/or used E-ZPass electronic tolling system motorcycle equipment.

Or, in the alternative,

> **New York Subclass:**
> All persons or entities in New York who purchased and/or used E-ZPass electronic tolling system motorcycle equipment.

45.     Together, the Nationwide Class and the New York Subclass shall be collectively referred to herein as the "Class." Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased and/or used the E-ZPass motorcycle electronic tolling system equipment for purposes of resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

46.     <u>Numerosity</u>:  The Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes that the Class consists of tens of thousands of persons and entities that were deceived by Defendants' conduct.

47.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of fact and law exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common factual and legal questions include, but are not limited to:

　　　　　a.  whether Class members were given timely notice of the charges Defendants imposed upon them;

　　　　　b.  whether any notice that Class member received provided an itemize

breakdown of toll charges, fees, and fines;

c.  whether Defendants failed to properly reimburse the Class members' funds;

d.  whether Defendants made untrue and/or materially misleading statements concerning the equipment defects, vehicle classification, and unreasonable and exorbitant fees of the E-ZPass electronic tolling system;

e.  whether Defendants were unjustly enriched as a result of their unfair and unlawful activities;

f.  whether benefits were conferred on Defendants by Class members;

g.  whether acceptance and retention of such benefits by Defendants would be inequitable under the circumstances; and

h.  whether Plaintiff and Class members were damaged as a result of Defendants' conduct.

48.  Typicality:  All of Plaintiff's claims are typical of the claims of the Class since all members of the Class were unfairly and unjustly assessed fees, fines, and other charges without explanation and with no ability to appeal or dispute them. Additionally, Defendants' conduct that gave rise to Plaintiff's claims is the same for all members of the class, including: assessing disproportionate and unreasonable fees, failing to inform the individuals of the fines levied upon their account, and

failing to properly reimburse the moneys back to their original credit card or ACH bank card. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class Members.

49.    Adequacy:  Plaintiff is an adequate Class representative because his interests do not materially or irreconcilably conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

50.    Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far

fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records and databases.

51.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

## COUNT I
### VIOLATIONS OF THE NEW YORK BUSINESS LAW
#### (N.Y. GEN. BUS. LAW §349, *et seq*.)
#### (On Behalf of the New York Class)

52.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

53.    N.Y. Gen. Law § 349 provides, in part, as follows: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

54.    Defendants' use deceptive acts and practices concerning the equipment defects, vehicle classification, and unreasonable and exorbitant fees while operating the E-ZPass electronic tolling system.

55.    Defendants represented, and continues to represent, that the E-ZPass equipment will correctly register and collect the appropriate toll if the consumer

correctly mounted the E-ZPass transponder in their motorcycle.

56.    Defendants represented, and continues to represent, that the E-ZPass fees and penalties will be reasonable and proportional.

57.    Plaintiff and the Class Members have been injured inasmuch as they relied upon the Defendants' representations and received less than what they bargained and/or paid for.

58.    Defendants' representations induced the Plaintiff and Class Members to purchase and use E-ZPass electronic tolling system equipment and services.

59.    Defendants conducted their deceptive acts, practices, and representations willfully, wantonly, and with reckless disregard for the truth.

60.    Defendants' deceptive acts and practices were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the products and services were and continue to be exposed to Defendant's material misrepresentations.

61.    As a result of Defendants' recurring, unlawful deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT II
## VIOLATIONS OF THE NEW YORK BUSINESS LAW

**(N.Y. GEN. BUS. LAW §350, *et seq*.)**
**(On Behalf of the New York Class)**

62.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

63.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

64.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows: The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . ."

65.    Defendants' labeling and advertisements contain untrue and materially misleading statements concerning the equipment defects, vehicle classification, and unreasonable and exorbitant fees of the E-ZPass electronic tolling system.

66.    Defendants represented, and continue to represent, that the E-ZPass

equipment will correctly register and collect the appropriate toll if the consumer correctly mounted the E-ZPass transponder in their motorcycle.

67.    Defendants represented, and continue to represent, that the E-ZPass fees and penalties will be reasonable and proportional.

68.    Plaintiff and the Class Members have been injured inasmuch as they relied upon the Defendants' advertising and received less than what they bargained and/or paid for.

69.    Defendants' advertising induced the Plaintiff and Class Members to purchase and use E-ZPass electronic tolling system equipment and services.

70.    Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

71.    Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the products and services were and continue to be exposed to Defendant's material misrepresentations.

72.    As a result of Defendants' recurring, unlawful, false advertising practices, Plaintiff and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT III
## BREACH OF CONTRACT
**(On Behalf of the Nationwide Class or, Alternatively, the New York Class)**

73.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth in length herein.

74.    Defendants contracted with Plaintiff and the Class Members through their purchase and use of E-ZPass electronic tolling system equipment and services.

75.    Under the agreement, the Defendants were required to provide Plaintiff and the Class Members with a functioning motorcycle transponder that properly registers and assesses bills and fees according to the correct vehicle class: motorcycles.

76.    Defendants breached the contract by misclassifying Plaintiff's and the Class Members' vehicles and overcharging them as a result of the vehicle misclassifications.

77.    Defendants' failure to comply with the contract in providing Plaintiff and the Class Members with motorcycle transponders that would accurately register Plaintiff's and the Class Members toll road travel and debit Plaintiff's and the Class Members' E-ZPass account denied Plaintiff and the Class Members the full benefit of their bargain.

78.    Accordingly, Plaintiff and the Class Members have been injured as a result of Defendants' breach of contract and are entitled to damages in an amount to

be proven at trial.

## COUNT IV
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (On Behalf of the Nationwide Class or, Alternatively, the New York Class)

79.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth in length herein.

80.    Defendants contracted with Plaintiff and the Class Members through their purchase and use of E-ZPass electronic tolling system equipment and services.

81.    This contract was subject to an implied covenant of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties—both explicit and fairly implied—and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenant that Defendants would act fairly and in good faith in carrying out its contractual obligations to provide Plaintiff and the Class Members with a functioning transponder that would accurately register Plaintiff's and the Class Members' toll road travel and debit Plaintiff's and Class Members' E-ZPass accounts.

82.    Defendants breached the implied covenant of good faith and fair dealing by:

   a.    Assessing erroneous fees for Plaintiff's and Class Members' toll road travel and debiting those fees from Plaintiff's and Class Members' E-

ZPass account despite the knowledge that the fees were the result of defective or incompatible transponders or vehicle misclassification;

b. Failing to replace Plaintiff's and Class Members' defective or incompatible transponders;

c. Failing to notify Plaintiff and the Class Members that they were regularly being assessed fees and penalties in excess of their toll road travel as a result of using a defective or incompatible transponder;

d. Failing to notify Plaintiff and the Class Members that they were regularly being assessed fees and penalties in excess of their toll road travel as a result of being billed according to incorrect vehicle classification;

e. Charging unlawful penalties under its contract.

83.    Defendants' failure to act in good faith in providing Plaintiff and Class Members with functioning transponders that would accurately register Plaintiff's and Class Members' toll road travel and debit Plaintiff's and Class Members' E-ZPass account denied Plaintiff and the Class Members the full benefit of their bargain.

84.    Accordingly, Plaintiff and the Class Members have been injured as a result of Defendants' breach of the covenant of good faith and fair dealing and are entitled to damages in an amount to be proven at trial.

## COUNT V
## FRAUDULENT CONCEALMENT
### (On Behalf of the Nationwide Class or, Alternatively, the New York Class)

85.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth in length herein.

86.    At relevant times, Defendants were engaged in the business of selling and providing services through the E-ZPass electronic tolling system.

87.    Defendants, acting through its representatives or agents, sold and provided services throughout the United States.

88.    Defendants willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the E-ZPass motorcycle transponders and the services provided through them, including the misclassification of vehicle for purposes of billing that often occurs when a motorcycle passes through a toll.

89.    Rather than inform consumers of the truth regarding the misclassification of vehicle, Defendant concealed material information related to the misclassification and billing issue.

90.    Defendants omitted this information to drive up sales and maintain its market power, as consumers would not purchase E-ZPass motorcycle equipment, or would pay substantially less for them, had consumers known the truth.

91.    Plaintiff and Class Members had no way of knowing about the vehicle misclassification issue.

92.    Plaintiff and Class Members could not have discovered the above information on their own, because Defendants were in the exclusive possession of such information.

93.    Although Defendants have a duty to ensure the accuracy of information regarding the performance of its E-ZPass motorcycle transponders and services, it did not fulfill this duty.

94.    Plaintiff and Class Members sustained injury due to the purchase and use of E-ZPass motorcycle transponders that suffered from vehicle misclassification billing issues.

95.    Defendants' acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff and Class Members' rights and well-being, and in part to enrich itself at the expense of consumers. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT VI
## FRAUDULENT MISREPRESENTATION
### (On Behalf of the Nationwide Class or, Alternatively, the New York Class)

96.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth in length herein.

97.    Defendants falsely represented to Plaintiff and the Class that:

    a.   E-ZPass equipment will correctly register and collect the appropriate

toll if the consumer correctly mounted the E-ZPass transponder in their vehicle; and

    b.  E-ZPass fees and penalties will be reasonable and proportional.

98.    Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase and use its electronic tolling system equipment and services.

99.    Defendants knew that its representations about the equipment, services, and fees were false in that the E-ZPass motorcycle transponders were either defective or incompatible with current E-ZPass equipment and technology – causing vehicle misclassification issues – and fees and penalties were excessive and exorbitant. Defendants allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

100.   Plaintiff and the Class did in fact rely on these misrepresentations and purchased and used E-ZPass electronic tolling equipment and services to their detriment. Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted the E-ZPass services and equipment, Plaintiff's and the Class's reliance on Defendants' misrepresentations was justifiable.

101.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased and used E-ZPass

motorcycle equipment and services that that they would not have purchased at all or would have paid less for had they known of the defective equipment and unreasonable fees and penalties that do not conform to the products' labels, packaging, advertising, and statements.

102.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>**COUNT VII**</u>
**CONVERSION**
**(On Behalf of the Nationwide Class or, Alternatively, the New York Class)**

103.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth in length herein.

104.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

105.    Plaintiff and Class Members have an ownership right to the monies paid for the E-ZPass motorcycle transponders and the services provided with them.

106.    Defendants have wrongly and intentionally asserted dominion over Plaintiff's and Class members' payments illegally diverted to them under the E-ZPass electronic tolling program agreements, and consequential damages resulting therefrom. Defendants have done so every time Plaintiff and Class Members paid to

purchase and use E-ZPass motorcycle transponders, expecting to be billed for tolls according to their proper vehicle class.

107.   As a direct and proximate cause of Defendant's conversion, Plaintiff and Class Members suffered damages in the amount of the payments made under the E-ZPass electronic tolling agreements that exceeded the motorcycle-specific toll billing amounts, and in the amount of consequential damages resulting therefrom.

## COUNT VIII
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class or, Alternatively, the New York Class)

108.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth in length herein.

109.   Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendants in the alternative to Plaintiff's contract claim.

110.   Plaintiff and members of the Class conferred a benefit on Defendants by purchasing and using E-ZPass electronic tolling system equipment and services.

111.   Defendants had knowledge that this benefit was conferred upon them.

112.   Defendants have been unjustly enriched at the expense of Plaintiff and the Class, and its retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully request that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.    Appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.    Award all actual, general, special (including treble), incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.    Award pre-judgment and post-judgment interest on such monetary relief;

E.    Grant appropriate injunctive and/or declaratory relief;

F.    Award reasonable attorneys' fees and costs; and

G.    Grant such further relief that this Court deems appropriate.


## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all issues so triable.


Dated:  October 7, 2021                    Respectfully submitted,

                                                            */s/ Joseph G. Sauder*
                                                            Joseph G. Sauder

Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
Berwyn, PA 19312
Tel: (888) 711-9975
jgs@sstriallawyers.com
jbk@sstriallawyers.com

E. Powell Miller (to be admitted *pro hac vice*)
**THE MILLER LAW FIRM, P.C.**
950 West University Dr., Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com